David R. Kott , Esq.
**McCARTER & ENGLISH, LLP**
Four Gateway Center
100 Mulberry Street
P.O. Box 652
Newark, NJ 07102
(973) 639-2056
(973) 624-7070 FAX

John A. Crawford, Jr., Esq. (*pro hac vice to be requested*)
**BUTLER SNOW LLP**
Renaissance at Colony Park, Suite 1400
1020 Highland Colony Park
P.O. Box 6010
Ridgeland, MS 39158-6010

Attorneys for Plaintiffs
  *American Addiction Centers, Inc.*
  *and Recovery Brands, LLC*

|  |  |
|---|---|
| | UNITED STATES DISTRICT COURT |
| | FOR THE DISTRICT OF NEW JERSEY |
| AMERICAN ADDICTION CENTERS, INC. : | |
| and RECOVERY BRANDS, LLC, : | Civil Action No. _____ |
| : | |
| Plaintiffs,: | |
| v. : | **COMPLAINT** |
| : | |
| FRANK L. GREENAGEL II, GREENAGEL : | **(JURY DEMANDED)** |
| COUNSELING SERVICES, LLC and : | |
| ANDREW WALSH, : | |
| : | |
| Defendants.: | |

Come now American Addiction Centers, Inc. ("AAC") and Recovery Brands, LLC

("Recovery Brands") (collectively, "Plaintiffs") and, for their complaint against Frank L.

Greenagel II ("Greenagel"), Greenagel Counseling Services, LLC ("Greenagel LLC") and

Andrew Walsh ("Walsh") (collectively, "Defendants"), state as follows:

# I. **INTRODUCTION**

1.     AAC provides high-quality, compassionate and innovative healthcare to adults struggling with addiction and co-occurring mental health disorders through treatment facilities in California, Florida, Louisiana, Massachusetts, Mississippi, Nevada, New Jersey, Rhode Island, and Texas.  AAC's mission is to help alcoholics and addicts achieve recovery, reclaim their lives and rejuvenate their relationships with their families and communities.

2.     Highlighting AAC's commitment as an industry leader in innovative care, AAC's Chairman and Chief Executive Officer was a founding board member of Dual Recovery Anonymous and currently serves as a member of the National Steering Council on Co-occurring Disorders.  AAC and its senior leadership have long advocated for "dual diagnosis" treatment, which integrates the Twelve-Step spiritual principles of addiction recovery with scientific treatment of co-occurring psychotic disorders such as anxiety and depression.

3.     In addition to operating leading addiction treatment facilities, AAC, through its Recovery Brands subsidiary, also operates a portfolio of educational and informative websites, including Drugabuse.com.

4.     Increasingly, the journey to recovery starts online.  There is unfortunately still much shame and stigma surrounding addiction.  These online resources provide people brave enough to seek treatment with convenience, privacy and autonomy.  Trusted facilities around the country, including about 300 independent members of the National Association of Addiction Treatment Providers ("NAATP"), use Recovery Brands' directories in order to communicate with those seeking treatment.

5.     AAC seeks to help set high standards for addiction treatment marketing standards through its Recovery Brands websites and through its public advocacy of addiction treatment

marketing reform.  Information on AAC's marketing best practices and its public efforts supporting marketing reform may be found on www.aacthetruth.com and Exhibit A hereto.

6.       AAC is a high-profile and highly scrutinized company in the addiction treatment industry. The stock of its parent company, AAC Holdings, Inc., is publicly traded on the New York Stock Exchange (NYSE: AAC) and is the only addiction treatment-focused publicly traded company. Thus, AAC is subject to the U.S. Securities and Exchange Commission regulations and reports its financial results and other operational information in regular public reports. As such, AAC is the most scrutinized and regulated company in the addiction treatment field.

7.       The addiction treatment industry is in a state of change and maturation. In response to rising alcoholism and drug addiction throughout the United States, competition among treatment providers has increased and the number of treatment providers has rapidly increased.

8.       As part of this changing landscape, the addiction treatment industry, which was traditionally comprised mostly of non-profit providers, has seen an increase in for-profit participants. This competitive shift has been difficult for many non-profit treatment providers and resulted in fewer patient admissions and decreased revenue.

9.       Unfortunately, some leading non-profit operators have responded to this by launching public defamatory attacks on AAC and other for-profit competitors. These anticompetitive tactics by non-profits have included false and defamatory attacks on AAC's marketing practices and generally sought to describe AAC and other for-profit treatment providers as greedy and not truly interested in helping those struggling with addiction.

10.      These non-profit competitors have gone as far as providing false information about AAC to federal and state governmental authorities. AAC's summary of this

3

anticompetitive dynamic may be found in AAC's congressional filings posted on www.AACthetruth.com.

11.     As part of this for-profit versus non-profit narrative meant to defame and injure AAC, starting in 2017 and continuing now, Greenagel, Greenagel LLC and Walsh agreed and conspired to unleash an unrelenting, on-going and unfettered attack on Plaintiffs. The goal of their conspiracy is and was to support, grow or receive counseling and consulting fees, salaries, positions, promotions and other compensation as well as prestige in and from the non-profit segment of the addiction treatment industry. To this end, Greenagel and Walsh have worked for many non-profit organizations, e.g., Hazelden Betty Ford Foundation, the Carrier Clinic, etc., and have sought to promote themselves by attempting to leverage this anti-AAC, anti-for-profit narrative. Using this malicious method of advertising and promotion (i.e., by attacking AAC), Defendants seek to further ingratiate themselves to competitors at AAC in the treatment industry and to receive or hopefully receive current and future fees, engagements, referrals and promotions from those competitors.

12.     In carrying out these orchestrated attacks, Defendants have and continue to willfully violate numerous federal and state laws and have and continue to unfairly compete with, libel and tortuously interfere with Plaintiffs, their products and their prospective business relationships.

13.     In furtherance of their civil conspiracy, of at least the matters that Plaintiffs currently know about, Defendants have attacked Plaintiffs as follows:

        a.     falsely and maliciously stated that Plaintiffs have committed unauthorized, unethical and criminal behavior;

b. falsely and maliciously accused Plaintiffs of having paid Google to manipulate search results on the name "Frank Greenagel";

c. falsely and maliciously mischaracterized AAC's online marketing practices, in order to prevent AAC facilities from reaching patients on Google.com's advertising platform;

d. falsely and maliciously asserted that multiple employees of AAC have pending indictments against them for murdering multiple patients;

e. posted profanity-laced comments online about ACC (i.e., "Straight up, American Addiction Centers is shit. SHIT");

f. falsely and maliciously asserted (without any evidence) that AAC "owns" its clients; and

g. falsely and maliciously asserted (contrary to the evidence within the study) that AAC's outcome study is full of lies and distortions.

14. Greenagel has engaged in his unprofessional, malicious attacks on AAC while being a professor at Rutgers University and serving on the Board of Directors of Hazelden Betty Ford Foundation in New York City. Greenagel seemingly violates Rutgers code of conduct and social media policies by and through his actions. His profane and malicious distortions about competing addiction treatment providers contradicts the stated mission of Hazelden Betty Ford's stated mission of providing "hope, healing and health to people affected by addiction to alcohol and other drugs."

15. Defendants have published (and continue to publish) preposterous and defamatory statements online set forth a multitude of false assertions. With the intent to injure, harm and

5

unfairly compete with AAC, Defendants falsely and wrongfully blame AAC and its online marketing services for a multitude of trumped-up transgressions as further described below.

16.     Defendants Greenagel, Greenagel LLC and Walsh have engaged in egregious acts of false and misleading advertising, unfair competition, libel, trade libel, tortious interference with prospective economic relations and civil conspiracy.

17.     Plaintiffs seek to recover for the injuries caused by Defendants' actions under the Lanham Act, 15 U.S.C. §1125, and New Jersey common law.

## II. PARTIES

18.     AAC is a Nevada corporation with its principal place of business located at 200 Powell Place, Brentwood, TN 37027.   AAC is deemed to be a citizen of the States of Nevada and Tennessee.   Recovery Brands, a wholly owned subsidiary of AAC, is a California limited liability company with its principal place of business located at 1200 4th Ave., San Diego, CA 92101.   As AAC is Recovery Brands' sole member, Recovery Brands has the same citizenship as AAC, and, therefore, it is deemed to be a citizen of the states of Nevada and Tennessee.

19.     Defendant Greenagel is a New Jersey citizen.   He may be served with the Summons and Complaint at 4 Hunters Circle, Lebanon, NJ 08833-4390 or at 1 Hillcrest Drive, Piscataway, NJ 08854-5801.

20.     Greenagel LLC is a New Jersey company with its principal place of business located at 1 Hillcrest Drive, Piscataway, NJ 08854.   On information and belief, Greenagel is the sole member of Greenagel LLC.   Therefore, Greenagel LLC is deemed to be a citizen of the state of New Jersey.   Greenagel LLC may be served with the summons and complaint by serving its registered agent Greenagel, located at the same address.

21.     Defendant Walsh is a New Jersey citizen.  He may be served with the Summons and Complaint at 252 County Road 601, Belle Mead, NJ 08502 or 12 Orchard Road, Florham Park, NJ 07932.

### III. JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction over this case and these parties pursuant to 28 U.S.C. §1332 as the amount in controversy in this case is in excess of $75,000, and there is complete diversity of citizenship.  Plaintiffs are deemed to be citizens of states of Nevada and Tennessee while Defendants are deemed to be citizens of the state of New Jersey.

23.     This Court additionally has subject matter jurisdiction over this case pursuant to the Lanham Act, 15 U.S.C. §1125 and 28 U.S.C. §1331.  This Court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367(a) over Plaintiffs' claims that arise under the laws of the state of New Jersey.

24.     This Court has personal jurisdiction over Greenagel LLC because it is a New Jersey company located in this district and generally conducts business in New Jersey such that it is subject to general personal jurisdiction in this district.  This Court has personal jurisdiction over Greenagel and Walsh because they are New Jersey residents.  This Court additionally has personal jurisdiction over Defendants as Plaintiffs' causes of action arise from the specific acts committed by Defendants in the state of New Jersey.

25.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(1) and (b)(2) because Defendants are located in this district and a substantial part of the events that give rise to this lawsuit occurred in this district.

ME1 28862074v.1

## IV. FACTS

26.     Greenagel holds himself out as a clinical social worker who specializes in addiction & recovery treatment and touts to the public a number of degrees or certificates: MPAP, MSW, LCSW, LCADC, ACSW, ICADC, CJC and CCS.  Greenagel asserts that he is licensed in New Jersey, New York and Pennsylvania.  Greenagel provides many of his services through his entity Greenagel LLC, to which Greenagel is the sole member and President.

27.     Greenagel and Greenagel LLC provide individual and family counseling – for hire – to clients and family members struggling with drug and alcohol addiction, thereby directly and indirectly competing with the addiction counseling services provided by AAC.  Greenagel and Greenagel LLC additionally provide counseling and supervision services – for hire – to certain non-profit rehabilitation facilities in New Jersey and other treatment centers that directly and indirectly compete with AAC.  These services provide Greenagel and Greenagel LLC with a handsome revenue stream.

28.     From 2014 to 2017, Greenagel served on the Board of Directors for the Hazelden Betty Ford Foundation in New York City.  The Hazelden Betty Ford Foundation directly competes with AAC and Recovery Brands for patients.  On information and belief, Greenagel and Greenagel LLC have received and continue to receive counseling, consulting and speaking engagement referrals from the Hazelden Betty Ford Foundation, its officers and employees and other non-profit organizations.  Greenagel and Greenagel LLC are financially motivated to encourage prospective patients and vendors to use and support clinics owned and run by Hazelden Betty Ford Foundation and other non-profit organizations and to unfairly compete with and libel AAC's clinics in order to continue these referrals from Hazelden Betty Ford Foundation, its officers and employees and other non-profit organizations.

8

29.     With the goal of defaming, injuring and damaging AAC and Recovery Brands and in furtherance of their goal to steer patients away from Plaintiffs, Greenagel and Greenagel LLC have partnered with Walsh.  Walsh is a Project Manager and Director of Clinical Trials for Carrier Clinic, which is one of the largest private non-profit psychiatric facilities in New Jersey. Before Walsh joined the Carrier Clinic, Greenagel and Walsh formed their business relationship while Walsh was working on a master's degree in social work and a master's degree in human resource management from Rutgers University.  While at Rutgers University, Walsh was under the supervision and training of Greenagel, who is an adjunct professor for the Rutgers School of Social Work.

30.     The Carrier Clinic directly competes with AAC and AAC's wholly owned subsidiary Recovery Brands.  In order to support his healthy income as project manager and director of clinical trials for the Carrier Clinic, similar to Greenagel above, Walsh is financially motivated to steer potential patients to the Carrier Clinic and away from AAC.

31.     In or around 2017, while Greenagel was on the Board of Directors of the Hazelden Betty Ford Foundation and working for Rutgers, Defendants agreed and conspired to defame, injure and harm AAC and Recovery Brands and to secure or enhance their respective income streams.

32.     Defendants conspired to use the posting of blog articles as a form of commercial advertising and promotion in competition with AAC and Recovery Brands.

33.     In furtherance of their conspiracy and playing upon the dichotomy discussed above, Walsh authored and Greenagel edited and posted on his Greenagel LLC website the blog article entitled "Con Artists, Grifters and Used Car Salesmen:  An Investigation Into For-Profit Addiction Hotline Practices."  *See* February 24, 2017 post, attached hereto as Exhibit B.  While

Defendants' February 24, 2017 post did not directly mention AAC, later in 2018 Greenagel confirmed online that it was intentionally directed at AAC.

34.     On June 5, 2017, Greenagel furthered his false and deceptive advertising and promotion campaign directly aimed at AAC by posting his article entitled "A NJ Treatment Center Locked Out its Workers and Transferred All Its Patients."

35.     With each holding themselves out as professional experts in the addiction, mental health and marketing space, starting at least in 2017, Greenagel, Greenagel LLC, and Walsh have continued to use their respective websites, blogs, articles, speeches and lectures as commercial advertising and promotion to misrepresent the services of AAC and Recovery Brands and to unfairly compete with, to libel and to tortuously interfere with Plaintiffs' prospective business advantages.

36.     Defendants' unrelenting and unfettered attacks on Plaintiffs generally fall into four categories of false and even preposterous attacks:  A.  AAC allegedly controls the internet, including Google search results; B. Preposterous assertions that AAC owns and murders its patients; C. AAC allegedly engages in horrific, unethical and illegal online marketing practices, and D. AAC client outcomes study is allegedly false and/or fraudulent.

> **A.     Malicious Attack No. 1 – AAC's allegedly controls the internet, including Google search results**

37.     By and through their online blog and frequent posts, Greenagel LLC, Greenagel and Walsh purport to provide knowledge and expert advice regarding the addiction recovery industry.  By and through their blog posts, internet websites, articles, speaking endeavors and online marketing, Greenagel, Greenagel LLC and Walsh discuss and opine on the practices of internet search engines, e.g., Google, Yahoo and Bing, as well as digital marketing and search engine optimization ("SEO") for addiction treatment centers.

MEI 28862074v.1

38.     On October 6, 2018, in furtherance of the conspiracy, Greenagel posted a blog article on the Greenagel LLC's website, entitled "American Addiction Center's Unauthorized, Unethical and (perhaps) Criminal Behavior." *See* October 6, 2018 post, attached hereto as Exhibit C.  Using his blog to attack the Plaintiffs and steer patients to his own business, Greenagel laces the October 6, 2018 post together with one false, misleading and libelous statement after another.

39.     Highlighting their bad faith and malicious intent to harm and injure Plaintiffs, out of the gate, the title of Greenagel's blog article falsely accuses Plaintiffs of "unauthorized, unethical and perhaps criminal behavior."  Greenagel falsely, maliciously – and indeed arrogantly and self-aggrandizingly – states that AAC and Recovery Brands have paid Google for the phrase "Frank Greenagel" so that Recovery Brands' website DrugAbuse.com appeared higher in the organic search results than his Greenagel LLC website. *See* October 6, 2018 post, attached hereto as Exhibit C.

40.     In reality, Plaintiffs have absolutely no reason or desire to ever be associated with Greenagel or Greenagel LLC and would have no reason to ever purchase advertising associated with Greenagel, on any advertising platform whatsoever.  Moreover, neither AAC nor any other business has the ability to manipulate organic search results on Google.com. And AAC did not – and could not – purchase the search term "Frank Greenagel," as AAC, like many treatment centers, is awaiting approval to advertise on the Google Ads platform from Google's certification agency, LegitScript LLC.

41.     In addition to there being absolutely no reason why Plaintiffs would ever want to be associated with them, Greenagel and Greenagel LLC knew that their statements directed at AAC and Recovery Brands in the October 6, 2018 post were false, misleading and deceptive.

11

Even worse, Defendants have continued to post the same knowing full well of the falsity.
Defendants knew full well that only Google and its algorithm determines the ranking of organic
search results as set forth on the screen shots they provided in their October 6, 2018 post.
Defendants also knew full well that businesses and individuals may only purchase search term
optimization from Google to affect the ranking of the search results of paid advertisements,
which is not at issue here.

42.     Greenagel and Greenagel LLC make these overtly false, misleading and libelous
statements with the full knowledge that neither AAC nor Recovery Brands nor anyone else can
manipulate or purchase organic search results on Google.  In the alternative only, Greenagel and
Greenagel LLC made these statements with a reckless disregard for the truth.

43.     Neither AAC nor Recovery Brands paid for SEO on the name "Frank Greenagel"
and did not link his name to the drugabuse.com website.  Indeed, had AAC or Recovery Brands
paid for SEO on this name (which it never would), it would only affect the ranking of paid
advertisements not the organic search results which is determined solely by Google.

44.     While going to great lengths to attack AAC and Recovery Brands, Greenagel and
Greenagel LLC end the blog post with more false, misleading and libelous statements:

> * update: I checked this on 10/20/2018 and found that the link to drugabuse.com no
> longer appeared and had been replaced by a link to SAMHSA. This piece was read by
> over 5,000 people in less than two weeks. Many of the readers are in government or the
> treatment industry. **I have no doubt that AAC decided to remove the link after
> recognizing they walked into a wolf trap. By removing it and linking it to SAMHSA
> (their lawyers must have thought it was a good idea), it is tantamount to admitting
> they did something wrong.** I have saved some screen shots to show what it looked like
> when AAC was engaging in their wildly unethical behavior ... [followed by organic
> search results on Google].

*See* October 6, 2018 post, Exhibit C (emphasis added).  Knowing full well that neither AAC nor
Recovery Brands later manipulated the organic search results so that the federal Substance

Abuse and Mental Health Administration ("SAMHSA") website now appears (and

DrugAbuse.com no longer does), Defendant knowingly (and arrogantly and self-aggrandizingly)

made these false statements to advertise and promote themselves by libeling and unfairly

competing with Plaintiffs. In the alternative, Defendants made this statement with a reckless

disregard for the truth.

45.     Taking great pride in the damages and injury they had already inflicted on

Plaintiffs, Greenagel and Greenagel LLC tout to their viewing public "[t]his piece was read by

over 5,000 people in less than two weeks." *Id.*

### B.   Malicious Attack No. 2 – Preposterous assertions that AAC owns and murders its patients

46.     Defendants next attack AAC by making wild and preposterous statements that

AAC owns and murders its patients.

47.     In their October 6, 2018 post, Greenagel and Greenagel LLC maliciously, falsely

and recklessly assert that AAC is in essence a serial murderer of its clients. October 6, 2018

post, Exhibit C, p. 1 ("multiple [AAC] employees have been indicted for murder of their clients.

That's right: multiple employees from American Addiction Centers have been indicted for the

murder of their clients.").

48.     In reality, in 2016, more than two years before Greenagel's false and malicious

post, a California judge dismissed all such charges against AAC and related parties. However, in

a blatant attempt to unfairly compete with Plaintiffs and to libel, injure and damage them,

Greenagel and Greenagel LLC, by using the term "have been", falsely and maliciously indicate

that the indictments are still pending when they know full well that the charges were dismissed in

2016.

49.     Further, the dismissed indictments related only to one client, not to multiple clients as asserted by Greenagel and Greenagel, LLC.  However, in order to inflict as much damage and injury on Plaintiffs as possible, Greenagel and Greenagel LLC made these assertions knowing full well that the statements were completely and utterly false. In the alternative only, Greenagel and Greenagel LLC made these statements with a reckless disregard for the truth.

50.     In furtherance of their civil conspiracy, on October 20, 2018, Greenagel and Greenagel LLC posted the next blog article on the Greenagel LLC website, entitled "Profits Before Patients: 'We own that client!'", which was authored by Andrew Walsh and edited by Greenagel. *See* October 20, 2018 post, attached hereto as Exhibit D.

51.     At the beginning of the October 20, 2018 post, Walsh, Greenagel and Greenagel LLC provide an account about an individual named "Jessica", whose name was changed "to protect her identity." In the blog article, Defendants assert that Jessica was "owned" by the treatment facility and that the detox facility (to which Jessica had been referred) was pressured by the treatment facility to return Jessica back to it despite the treatment facility not having the "appropriate capabilities to treat Jessica's severe anxiety or her serious trauma history" and that she needed "a program that was licensed to provide dual diagnosis services." *Id.*  Defendants end the account with the following assertion:

> **The thought of referring Jessica to a more clinically appropriate program rarely crossed the minds of the treatment [facility].  After all, Jessica belonged to them.**

October 20, 2018 post, Exhibit D (emphasis in original).  Then Defendants immediately quote from a prior USA Today article which regurgitates the assertions of a plaintiff's lawyer in a prior lawsuit against AAC.  But Defendants go a step further and state:

> These stories highlight a common occurrence in the substance abuse field that is incredibly troubling:  treatment providers owning clients.

October 20, 2018 post, Exhibit D.  In doing so, by and from the structure of the article,

Defendants assert that AAC "owns its clients" or that AAC believes that it "owns its clients",

which a patently false, misleading and libelous statement regarding the services provided by

Plaintiffs.

52.     Defendants additionally structured the October 20, 2018 post to make the viewing

public believe that Defendants were referring to AAC in the Jessica account.  October 20, 2018

post, Exhibit D.

53.     On November 3, 2018, Greenagel posted on his Greenagel LLC website an article

authored by Andrew Walsh and edited by Greenagel and is titled "Bearing False Witness:

American Addiction Centers' Client Outcome Studies." *See* November 3, 2018 post, attached as

Exhibit E.

54.     Defendants continued their attacks on Plaintiffs with the following false, bad faith

and malicious statement that AAC is a manipulator, distorter and a liar:

> [ix] A few brutally honest answers before you get back to Andrew's more measured
> response: their substandard programs product terrible results, **so they need to cherry
> pick their data, manipulate figures, distort perceptions and sometimes straight up
> lie.**  They assume that most people won't read all 76 pages, so they bury these problems
> deep within it. – Frank Greenagel

*See* November 3, 2018 post, Exhibit E (emphasis added).

55.     Defendants also attack various survey methodologies of AAC. Probably not

coincidentally, Defendants do not scrutinize the methodologies of other treatment center

outcomes studies – such as those published by Hazelden Betty Ford – many of which do not

provide any detail as to methodology in contrast to what AAC does.

56.     In reality, AAC's Client Outcomes Study, which is discussed further below, was

conducted by Centerstone Research Institute, a widely respected research organization.

ME1 28862074v.1

However, rather than try to promote and elevate addiction treatment research, the Defendants defame and spread misinformation about AAC's efforts to add to the existing body of addiction treatment studies.

**C.     Malicious Attack No. 3 – AAC's allegedly engages in horrific, unethical and illegal marketing practices**

57.     In an attempt to further injure Plaintiffs, Greenagel and Greenagel LLC also attack Plaintiffs regarding their marketing practices and incorporate a prior post by their co-conspirator Walsh:

> On February 24, 2017, I published a piece by Andrew Walsh about the unethical (and probably illegal) behavior of addiction treatment hotlines. While AAC was never mentioned by name in the article, one of the hotlines that engaged in the horrific and unethical behaviors that Mr. Walsh wrote about is owned by AAC.

*See* October 6, 2018 post, Exhibit C. In short, Defendants falsely and maliciously assert that AAC and Recovery Brands are engaged in horrific and unethical and illegal behavior regarding their use of hotlines.

58.     Despite being a professor at Rutgers University and a former member of the Board of Directors of Hazelden Betty Ford Foundation,  which are organizations with reputations for professionalism, Greenagel next profanely confirms Defendants on-going efforts to improperly attack and injure AAC:

> On September 10, 2018, I posted this on my Greenagel Counseling Services Facebook page:
>
> Straight up, American Addiction Centers is shit.
>
> SHIT.
>
> They own these websites: recovery.org, rehabs.com, projectknow.com and drugabuse.com. They are set up as community help, but they steer clients towards themselves. And their programs are rife with problems  (and then I linked to this article about their websites).

16

*See* October 6, 2018 post, Exhibit C.

59.    In reality, AAC has been an advocate for addiction treatment marketing reform, including recently passed Tennessee legislation. See

https://thehill.com/opinion/healthcare/407755-effective-regulation-of-the-addiction-treatment-industry-will-take.

**D.    Malicious Attack No. 4 – AAC's allegedly fraudulent Client Outcomes Study**

60.    The November 3, 2018 post by Defendants contained the following header underneath the title:



*See* Exhibit E.

61.    By way of background, on February 20, 2018, AAC released its findings on its first patient outcome study and posted the full detailed findings on its website. *See*

17

https://americanaddictioncenters-org-

uploads.s3.amazonaws.com/uploads/2018/08/AAC_Outcomes_Study_Web.pdf

62.    AAC has been more transparent than any treatment provider in the nation by

publishing its full results online for all to review.  By comparison, the few other providers who

post outcomes of their studies leave out important details related to sampling and survey

methodology.

63.    AAC has been fully transparent about its outcomes study and the methodology

used and the limitations thereto.

64.    Despite AAC's transparency, in the November 3, 2018 post, Defendants falsely

and misleadingly state that AAC's outcome study was "full of distortions and lies".  *See*

November 3, 2018 post, Exhibit E.

65.    In the November 3, 2018 post, Defendants represent that AAC is lying and

making a "horrific distortion" when it asserts that "[a]t 12 months, 63% of patients were

abstinent from all substances." However AAC's client outcomes study makes it crystal clear the

meaning of this statement and the data behind it, which illustrates that Defendants have again

improperly and unjustifiably attacked Plaintiffs.

66.    Defendants next assert that the 141 participants in the 12 month testing group that

did not respond were most likely relapsed patients (and should have all been treated as such) and

Greenagel then states "[l]et us speculate a step further – American Addiction Centers knew that

the clients relapsed and then cut them from the study in order to improve their reported

percentages of sober clients. – Frank Greenagel".  *Id.* However, in order to further damage and

injure Plaintiffs, Defendants completely ignore the analyses of Centerstone Research Institute –

set forth within the study –  that emphatically refutes the false assertions of Defendants.  *See*

18

"Generalizability of the Data" section of Outcomes Study, pp. 45-46 & Technical Appendix thereto.

67.     Defendants simply ignore the generalization analyses done by Centerstone Research Institute and merely proceed with their intentionally harmful and reckless statements.

68.     Confirming their malicious intent to harm Plaintiffs, Defendants make a few parting shots in the blog article.  In footnote [xii], Defendants state:

> Andrew is too kind here.  The integrity of the study wasn't threatened.  There is no integrity.  The people that conducted the studies are either inept or evil, and possibly both. – Frank Greenagel

November 3, 2018 post, Exhibit E.  And Defendants falsely state:

> The report is invalid, though it is not useless.  **It gives a first hand account (written by them) of the fraud and lies that they regularly and willfully engage in.**

November 3, 2018 post, Exhibit E (emphasis added).

69.     Regarding the general areas above as well as five listed blog articles by them, Defendants made each of these identified statements (and others within the articles) knowing full well that each statement was false, or in the alternative, Defendants acted with a reckless disregard for the truth or falsity of the statement.

70.     Each of Defendants' statements in the five listed blog articles is a false or misleading statement of fact.

71.     Each of the statements made by Defendants, who directly and indirectly compete with Plaintiffs, was used in a commercial advertisement or promotion by and through the blog articles.

MEI 28862074v.1

72.     Each of the above statements made by Defendants deceives or is likely to deceive prospective consumers (as well as suppliers, vendors, regulators, and third party review companies) in a material way.

73.     Each of the above statements made by Defendants was made in interstate commerce.

74.     Each of the above statements made by Defendants has caused or is likely to cause competitive or commercial injury to the Plaintiffs.

75.     While concealing their profit motives to divert prospective patients from AAC to the Carrier Clinic, the Hazelden Betty Ford Clinic and other competing clinics that refer clients or provide various forms of revenues to each of them, respectively, Defendants agreed and entered into a civil conspiracy to harm and injure Plaintiffs.

76.     Each of the statements above by Defendants is literally false.

77.     In the alternative only, some of these statements above by Defendants implicitly convey a false impression, are misleading in context and/or are likely to deceive consumers (i.e., prospective patients in need of counseling and consulting services).

78.     Defendants made each of the statements above knowing full well that they were false and libelous.

79.     Defendants made each of statements above with the actual intent to harm or injure Plaintiffs and to divert potential patients from AAC to the Carrier Clinic, the Hazelden Betty Ford Foundation and other competing non-profit clinics in order to protect or bolster their various streams of revenue.

80.     Defendants have engaged and continue to engage in false and misleading advertising against Plaintiffs in interstate commerce.

MEI 28862074v.1

81.     Defendants' statements deceived or have the capacity to deceive consumers, specifically, individuals in need of drug and alcohol treatment (i.e., potential patients).

82.     Defendants' false and deceptive statements have and will continue to have a material effect on potential patients' decisions regarding if and from whom to get treatment as well as third-party businesses that evaluate treatment facility businesses, e.g., LegitScript LLC. In particular, Alphabet Inc. and Google have created an Internet search engine advertising platform called Google Ads.  In 2017, Google suspended AdWords services for all drug rehabilitation centers due to the poor practices of some bad operators.  Thereafter Google determined to permit certain treatment centers to resume using Google Ads to market their services, but only after the treatment center had obtained an "Addiction Treatment Certification" from Google's certification agent, LegitScript LLC. Google tasked LegitScript LLC with objectively vetting, evaluating, and authorizing treatment centers as legitimate, upright operations such that Google would permit that treatment center to advertise on Google Ads.

83.     Defendants' actions have caused Plaintiffs economic and reputational harm flowing from their false and deceptive blog articles by causing potential patients to not use AAC's treatment facilities and to not use Plaintiffs' website DrugAbuse.com.  Additionally, Defendants' actions have impacted or will likely impact Plaintiffs' standing with LegitScript LLC and AAC's access to significant advertising opportunities through Google Ads.

## V.  <u>CAUSES OF ACTION</u>

### CAUSE NO. 1 – VIOLATION OF SECTION 43(a) OF THE LANHAM ACT

84.     Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

ME1 28862074v.1

85.     Section 43(a) (1) (B) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B), prohibits, *inter alia*, any "false or misleading description of fact, or false or misleading representation of fact which ... in commercial advertising or promotion, misrepresents the nature, characteristics, [or] qualities ...of ... goods, services, or commercial activities."

86.     Defendants provide their services – for hire – to treatment facilities that compete with Plaintiffs in interstate commerce, and they engage in nationwide or regional advertising by and through the use of websites, blog postings and other marketing of their services.

87.     Defendants have made and continue to make the following false and misleading claims set forth above.

88.     Each of these claims is false and misleading and misrepresents the nature, characteristics, or qualities of Defendants' services, facilities and website DrugAbuse.com, as described herein.  Defendants have authorized and directed the making of each of these false and misleading assertions.

89.     Defendants' false claims are material to prospective patients and induce prospective patients to believe that Plaintiffs' services and website are somehow inferior to the services offered by competing facilities and clinics from which Defendants derive their salaries, consulting fees, promotions and other forms of revenues as well as prestige within the non-profit treatment community.

90.     Defendants' deceptive conduct is and has been deliberate and willful and has injured and continues to injure Plaintiffs.

91.     Defendants' advertising and promotional publications, as described above, violates Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

MEI 28862074v.1

92.     As a result of Defendants' misrepresentations, Plaintiffs have been injured and continue to be injured, in an amount to be determined at trial.

93.     Plaintiffs, on one hand, and Defendants, on the other, are directly and indirectly competitors in providing counseling to addiction recovery patients.  Defendants' actions have impaired Plaintiffs' ability to compete in the United States market, which has in turn damaged Plaintiffs. Additionally, Defendants' actions have impacted or will likely impact Plaintiffs' standing with LegitScript LLC and Google and will deny AAC access to significant advertising opportunities through Google Ads.

94.     Moreover, unless Defendants are enjoined by this Court and ordered to retract and correct its false and misleading advertisements and statements, Defendants' statements will continue to mislead the public and cause Plaintiffs to suffer a loss of sales, profits, and goodwill, along with the cost of remedial corrective advertising, much of which loss is, and will be, irreparable.  As such, Plaintiffs are entitled to an injunction restraining Defendants, their agents, employees, representatives and all persons acting in concert with them from engaging in further acts of false advertising and promotion, and ordering removal of all of Defendants' false and misleading statements.

## CAUSE NO. 2 – COMMON LAW UNFAIR COMPETITION

95.     Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

96.     Each of Defendants' claims identified herein is false and misleading and misrepresents the nature, characteristics or qualities of Plaintiffs' services and website. Each of Defendants' actions and inactions set forth above were for the purpose of unfairly competing with Plaintiffs.

23

97.     Defendants' false claims are material to potential patients and induce potential patients to use Defendants' services or the services provided by the competitors of Plaintiffs to which Defendants sell their services or consulting instead of using Plaintiffs' services, website or facilities.

98.     Defendants' false and misleading advertising and promotion by and through their blog articles constitutes unfair competition under common law.

99.     Defendants have also disseminated the false and deceptive information set forth in their website postings.

100.    Defendants' deceptive conduct is and has been deliberate and has injured and continues to injure Plaintiffs.  In addition, Defendants are causing, and are likely to cause, substantial injury and damage to Plaintiffs for which there is no adequate remedy at law. Defendants' actions have impacted or will likely impact Plaintiffs' standing with LegitScript LLC and Google and will deny AAC access to significant advertising opportunities through Google Ads.

101.    Plaintiffs are entitled to compensatory damages, punitive damages, and injunctive relief under common law. As a result of Defendants' unfair competition and other violations of law as set forth in this Complaint, Plaintiffs also seeks punitive damages and their attorneys' fees, as well as all pre-judgment interest, post-judgment interest and all costs of court.

### CAUSE NO. 3 – LIBEL

102.    Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

103.    Defendants published each of the blog articles described above and thereby publicly disseminated false and misleading statements about Plaintiffs.

104.    Defendants published the false and misleading statements without having any privilege to do so.  Defendants knew or should have known that the published statements are false and/or acted with negligence or reckless disregard for their truth or falsity.

105.    Plaintiffs were and continue to be damaged as a direct and proximate result of the false and misleading statements in the blog articles. As a direct and proximate result of the libel by Defendants, Plaintiffs have incurred, are suffering and will continue to suffer damages, including but not limited to lost net profits and/or loss of business reputation.  Defendants' actions have impacted or will likely impact Plaintiffs' standing with LegitScript LLC and Google and will deny AAC access to significant advertising opportunities through Google Ads.

106.    As a result of Defendants' false and misleading statements and other violations of law as set forth in this Complaint, Plaintiffs also seek punitive damages and their attorneys' fees from, as well as all pre-judgment interest, post-judgment interest and all costs of court.

**CAUSE NO. 4 -TRADE LIBEL or PRODUCT DISPARAGEMENT**

107.    Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

108.    Defendants published each of the blog articles described above and thereby publicly disseminated false and misleading statements about Plaintiffs' website and services.

109.    Defendants knew or recklessly disregarded that the statements about Plaintiffs' website and services were false, and therefore acted with malice when they published them in the blog articles described above (and indeed continuously publish the same as they have remained posted on Defendants' website).

110.    At the time of publishing the statements, Defendants knew or reasonably should have known that the statements would likely result in inducing potential patients not to deal with

25

Plaintiffs.  In fact, these false statements have played a material and substantial part in inducing potential patients not to deal with Plaintiffs.

111.    The malicious and false statements about Defendants' website and services have caused special pecuniary harm to Plaintiffs and harmed Plaintiffs' goodwill and business reputation.

112.    Plaintiffs were directly and proximately damaged by the false statements in the blog articles above.  As a direct and proximate result of the trade libel or product disparagement by Defendants, Plaintiffs have incurred, are suffering and will continue to suffer damages, including but not limited to lost net profits by and through the diversion of patients and negatively affecting the decisions of third-party businesses that evaluate treatment facility businesses, e.g., LegitScript LLC. As a result of Defendants' product disparagement and other violations of law as set forth in this Complaint, Plaintiffs also seek punitive damages and their attorneys' fees, as well as all pre-judgment interest, post-judgment interest and all costs of court.

### CAUSE NO. 5 – TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC RELATIONS

113.    Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

114.    Plaintiffs have a reasonable expectation of economic advantage with regard to obtaining drug and alcohol patients that buy and use their consulting services, facilities and related services and to contracting with and/or receiving reasonable and fair treatment by third party vendors, e.g., LegitScript LLC.

115.    Defendants intentionally, wrongfully and without justification or excuse interfered with Plaintiffs' prospective economic relations with third parties by, among other

MEI 28862074v.1

things, making false and material representations about Plaintiffs' facilities, services and website as set forth above.

116.     Some or all of the statements made by Defendants above are literally false and misleading.

117.     Defendants have also disseminated the false and deceptive information set forth in their websites and blog postings.  They have sought to frighten or intimidate Plaintiffs' prospective customers and third party vendors with whom Plaintiffs seek to work.

118.     There was a reasonable probability that if Defendants had not intentionally, wrongfully and without justification or excuse interfered with third parties, Plaintiffs would have been able to enter into agreements with the prospective patients of the use of Plaintiffs' facilities and services and/or would have been able to enter into agreements with third parties such as LegitScript LLC and Google.

119.     Plaintiffs have lost opportunities to enter into agreements as a result of Defendants' tortious interference.

120.     As a direct and proximate result of the tortious interference of Defendants, Plaintiffs have incurred, are suffering and will continue to suffer damages, including but not limited to lost net profits. Plaintiffs also seeks punitive damages and its attorneys' fees from Defendants' tortious interference as well as all pre-judgment interest, post-judgment interest and all costs of court.

## CAUSE NO. 6 – CIVIL CONSPIRACY

121.     Plaintiffs incorporate and reallege the above paragraphs of this Complaint as if fully set forth herein.

27

122.    Plaintiffs have a reasonable expectation of economic advantage with regard to obtaining patients who buy and use their facilities, services and website.

123.    Defendants Walsh, Greenagel and Greenagel LLC, together, entered into an agreement to intentionally, wrongfully, and without justification or excuse to unfairly compete with, to libel and to interfere with Plaintiffs' prospective economic relations with third parties and to make false representations as set forth in the blog articles above.

124.    Defendants Walsh, Greenagel and Greenagel LLC committed these wrongful acts to unfairly compete against Plaintiffs, injure Plaintiffs' goodwill, and wrongfully take patients and prospective patients from Plaintiffs.

125.    Plaintiffs have lost opportunities to enter into third party agreements as a result of Defendants' unfair competition, libelous statements, tortious interference and bad faith actions. Additionally, Defendants' actions have impacted or will likely impact Plaintiffs' standing with LegitScript LLC and Google and will deny AAC access to significant advertising opportunities through Google Ads.

126.    As a direct and proximate result of this civil conspiracy by Defendants, Plaintiffs have incurred, is suffering and will continue to suffer damages.

WHEREFORE, Plaintiffs pray that judgment be entered in its favor and against Greenagel, Greenagel LLC and Walsh as follows:

A.    Judgment in Plaintiffs' favor on all causes of action alleged herein;

B.    Damages in an amount to be determined at trial, included by not limited to lost net profits and loss of reputation damages, which damages significantly exceed $75,000;

C.    Treble and/or other statutory damages, and reasonable attorneys' fees and costs under all applicable federal and state statutes;

ME1 28862074v.1

D.     An Order permanently enjoining Greenagel, Greenagel LLC and Walsh, their

agents, or anyone working for, in concert with or on behalf of Greenagel, Greenagel LLC

and Walsh from engaging in the false or misleading advertising and promotion identified

herein, including but not limited to, removal of all false or misleading advertisements and

promotions and corrective advertising to remedy the effect of Greenagel, Greenagel LLC

and Walsh's false advertising and promotion;

E.     Punitive damages;

F.     Attorneys' fees;

G.     Pre-judgment interest and post-judgment interest;

H.     All costs of court; and

I.     Such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs hereby demand trial by jury of all issues that

may be so tried.

McCARTER & ENGLISH, LLP
Attorneys for Plaintiffs
*American Addiction Centers, Inc.*
*and Recovery Brands, LLC*

By:

David R. Kott
A Member of the Firm

Dated:  December 20, 2018

MEI 28862074v.1